**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DAMARIS ADAMO, individually and as the parent, natural guardian and next friend on behalf of her children and all others similarly situated,** | **Civil Action No. 15-1073 (MCA)** |
| **Plaintiffs,** |  |
| **v.** | **OPINION** |
| **LINDA GRASSO JONES, et al.,** |  |
| **Defendants.** |  |

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court by way of several motions to dismiss from the following Defendants: (1) Davison, Eastman, Munoz, P.A. ("DEM") (improperly pled as the "Lomurro Law Firm" and "Lomurro, Davison, Eastman & Munoz"), Jenna Shapiro, Esq. ("Shaprio"), Bettina Munson, Esq. ("Munson"), and Stephen Carton, Esq. ("Carton"), Dkt. No. 11; (2) New Jersey State Bar Association ("NJSBA"), (improperly pled as "New Jersey Bar Association"), Dkt. No. 16; (3) Louis Johnson, Dkt. No. 18; (4) State Defendants, Dkt. No. 19[1]; (5) County of Monmouth, Dkt. No. 21; and (6) Paula DiLiberto and Robert DiLiberto, Dkt. No.

---

[1] The State Defendants include the following: the State of New Jersey; Office of the Attorney General; Administrative Office of the Courts ("AOC"); Superior Court of New Jersey, Monmouth Vicinage (improperly pled as "Monmouth County Superior Court"); Advisory Committee on Judicial Conduct ("ACJC"); Governor Chris Christie; Chief Justice Stuart Rabner; Hon. Glenn A. Grant, J.A.D., Acting Administrative Director; Hon. Allison E. Accurso, J.A.D.; Hon. Lisa P. Thornton, A.J.S.C.; Hon. Kathleen Sheedy, P.J. Fam.; Hon. Linda Grasso Jones, J.S.C.; Hon. Teresa Kondrop Coyle, J.S.C. (improperly pled as "Theresa Condrup Coyle); Hon. Lawrence M. Lawson, J.S.C. (ret.); Hon. Louis F. Locascio, (ret.) (improperly pled as "Louis F. Locacio, J.S.C."); Executive Director John Tonelli of ACJC; Ombudsman Theresa Romano; Senior Probation Officer Carole Mandell; and former law clerk Yesenia Rodrigues.

23.  Plaintiff does not oppose any of these motions.  No oral argument was heard pursuant to Fed.

R. Civ. P. 78.  For the reasons set forth below, all motions are **GRANTED.**

## I.   BACKGROUND

On February 9, 2015, pro se Plaintiff Damaris Adamo initiated this action on behalf of herself, her children, and all others similarly situated, against multiple judges, the Office of the Attorney General of the State of New Jersey, various attorneys, the NJSBA, Administrative Office of the Courts ("AOC"), the Advisory Committee on Judicial Conduct ("ACJC"), the Governor of New Jersey, the County of Monmouth, the State of New Jersey, court staff, her ex-husband's parents, Robert and Paula DiLiberto, her private accountant, Louis Johnson, and various other individuals.  Compl., Dkt. No. 1.

Although Plaintiff's 69-page, 354-paragraph Complaint is somewhat difficult to decipher, this action apparently arises out of Plaintiff's dissatisfaction with family state court divorce and domestic violence proceedings involving Plaintiff and her ex-husband Defendant Brett DiLiberto. The allegations challenge the outcome of her state family court proceedings, the impartiality of the judges, and alleges a claim under the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 for an alleged conspiracy between the courts and her ex-husband, presumably to enter orders against her interest.  Plaintiff names as Defendants essentially any person or entity with any conceivable connection to the state custody proceedings.  Id. ¶ 44-84.  The family state court proceedings are at the heart of the Complaint.

### A.  State Court Proceedings

Plaintiff submits that the basis for her claims started in 1992 when Plaintiff and Brett DiLiberto ("Mr. DiLiberto") married.  Id. ¶¶ 90-91.  In 1998, Plaintiff filed for a temporary restraining order against Mr. DiLiberto for claims of domestic violence, which she voluntarily

dismissed.  Id. ¶¶ 95-97.  She also filed for divorce.  Id. ¶ 96.  During the divorce proceedings, there was also a domestic violence ("DV") trial before the Honorable Theresa Kondrup Coyle in Monmouth County.  Id. ¶ 62.  Plaintiff alleges that Judge Kondrup Coyle made credibility determinations against Plaintiff.  Id. ¶ 143.

Defendant Bettina Munson, Esq. and Jenna Shapiro, Esq. both from DEM represented Mr. DiLiberto in the DV and divorce proceedings.  Id. ¶¶ 115, 119.[2]  James Andrews, Esq. represented Plaintiff in her divorce proceedings from January 2013 through August 2013.  Id. ¶ 73.

The divorce proceedings were before the Honorable Linda Grasso Jones.  Id. ¶¶ 53, 155-58, 175-241.  Plaintiff challenges Judge Grasso Jones' rulings in the underlying state court proceeding and claims the Judge attempted to suppress evidence.  Id. ¶¶ 125-26.  Plaintiff alleges that Mr. DiLiberto and his father, Robert DiLiberto, had a "history of finances, hiding assets, collusion, and lying to Judge Condrup [sic] Coyle, Judge Grasso Jones and to Damaris Adamo, Judge Locascio and Judge Feldman, two retired judges who were mediators . . . ."  Id. ¶ 152.  Plaintiff claims these lies cost her money in legal fees and loss of credibility at the DV hearing.  Id. ¶ 154.

Plaintiff alleges that Judge Grasso Jones abused her discretion, violated Plaintiff's due process rights, and engaged in racketeering activity by:

> Consistently [buying] into this argument and [refusing] to acknowledge the fraud conducted by Brett and his father because she is part of the racket, along with the Lomurro Law Firm . . . [and] has been making objections on Brett's behalf and barring vital testimony . . . [S]he is acting as counsel, concealing the fraud and racketeering for which she is a party to, and obstructing justice.

---

[2] Prior to the start of the divorce trial, Shapiro left DEM, and Stephen Carton, Esq., from the firm took over to represent Mr. DiLiberto.  Id. ¶¶ 198-99.

Id. ¶¶ 155-58.  Plaintiff also alleges that even though child custody is not an issue, the Defendants are "colluding and conspiring to set Plaintiff Damaris up for a post-divorce custody battle."  Id. ¶ 159.  She claims this is "common practice for this kind of RICO activity to send the wife/mother into financially depravity, then turn around and claim she cannot adequately provide for and care for her children."  Id.

Plaintiff claims that her attorney, James Andrews, Esq.,[3] refused to file a pendent lite application on behalf of her and her four children during his representation from January 2013 to September 2013, and he threatened not to represent her if she didn't agree to forgo alimony and equitable distribution.  Id. ¶¶ 165, 168.  In September 2013, Carly Leightman replaced Andrews as counsel for Plaintiff.  Id. ¶ 172.

Plaintiff alleges that Judge Grasso Jones colluded with the Lomurro Law Firm by manipulating the court proceedings and violating confidentiality principles of mediation.  Id. ¶¶ 175-82.  She also alleges that Judge Grasso Jones intimated the Plaintiff by ordering mediation with Judge Locascio, and manipulated the court proceedings to unilaterally drive Plaintiff into involuntary bankruptcy and foreclosure.  Id. ¶¶ 185-86, 195.  Plaintiff alleges that from January through June 2013, Judge Grasso Jones "became aggressively hostile and determined to make life so difficult that Plaintiff would be forced to settle unfairly."  Id. ¶ 196.  Plaintiff alleges that Judge Grasso Jones "colluded with Lomurro Law Firm to complicate Discovery, then became flippant and castigated Plaintiffs."  Id. ¶ 211.  Plaintiff asserts that at one point Judge Grasso Jones blocked Mr. DiLiberto's testimony "as it was revealing criminal activity about human trafficking and child prostitution to which she, Mr. DiLiberto, and Lomurro law Firm appear to be linked."  Id. ¶ 220.

---

[3] Mr. Andrews filed an answer on July 9, 2015.  See Dkt. No. 20.

Plaintiff also alleges that Judge Grasso Jones regularly interfered with her attorney's ability to protect her due process rights to a fair and impartial trial.  Id. ¶¶ 230, 236.  She claims that

> [i]t must be that Judge Grasso Jones, Lomurro Law Firm, and other Defendants named herein do not fear repercussion for their unlawful actions because Governor Chris Christie, his administration, the NJ judiciary, the AOC, ACJC, and Attorney General of the State have a known history of acting as a calculated and conspiratorial support system to these Defendants' crimes as they are part of the racket, players and agents of the RICO enterprise.

Id. ¶ 240.

## B.  Allegations Against Other Defendants

Other allegations in the Complaint deal with parties bearing some collateral relationship to the state court proceedings.  For completeness, the Court will briefly summarize Plaintiff's allegations against defendants who are currently moving to dismiss.

### 1.  State Defendants

In addition to suing Judge Grasso Jones and Judge Kondrop Coyle, Plaintiff asserts allegations against various other State Defendants, which relate to the family court proceedings.

Governor Chris Christie is sued for "routinely appoint[ing] corrupt judiciaries or otherwise fail[ing] to remove them" and for "misleading constituents" and giving them "false hope."  Id. ¶¶ 242, 246.  Plaintiff sued other Defendants, including the Office of the Attorney General, and the New Jersey State Bar Association for similar charges of alleged nonfeasance and malfeasance. See id. ¶¶ 279-294.

The Superior Court of New Jersey, Monmouth Vicinage is sued for its alleged "[a]buse of judicial power" and because "courts may not disregard plain statutory language."  Id. ¶ 258.

The only allegations Plaintiff alleges against the State of New Jersey is that it is "ultimately responsible for the actors of its state."  Id. ¶ 264.

The Administrative Office of the Courts ("AOC") is sued for allegedly failing to properly manage the State's courts.  Id. ¶¶ 259-61.  The AOC's Director, Judge Glenn Grant is also sued for allegedly mismanaging his office.  Id.

The Advisory Committee on Judicial Conduct ("ACJC") and its Executive Director John Tonelli ("Tonelli") are sued for allegedly failing to conduct a proper investigation of complaints against the family court system in NJ.  Id. ¶¶ 262-63.  Ombudsman Theresa Romano is sued for her referral of litigants to the ACJC and "consistently and deliberately fail[ing] in her duties as Ombudsman in favor of racketeering."  Id. ¶ 278.

In addition to Judge Grasso Jones and Judge Kondrup Coyle, Plaintiff asserts allegations against various other judges. Judge Lawson, Judge Grasso Jones' superior and the Assignment Judge in Monmouth County, is sued on the basis that he failed to take action against the trial judge and court after being made aware of Plaintiff's complaints.  Id. ¶¶ 265-67.  Judge Lawson's successor as Assignment Judge, Judge Thornton, is sued for not cleaning up alleged wrongdoing in Monmouth County.  Id. ¶ 273-77.  Judge Thornton's successor, Judge Sheedy, is also sued for the same reason.  Id. ¶ 63.  Plaintiff also sues Judge Sheedy's former law clerk, Yesenia Rodriguez.  Id. ¶ 65.  New Jersey Supreme Court Chief Justice Stewart Rabner is sued for failing to act after Plaintiff informed him that family lawyers in New Jersey "were illegally conspiring with Judges to steal from parents as part of a racketeering enterprise."  Id. ¶¶ 268-72.

## 2.  County of Monmouth

As to the County of Monmouth, Plaintiff has included several paragraphs of allegations under the heading "County of Monmouth."  Id. ¶¶ 247-53.  Despite the wording of the heading preceding the allegations, a review of these paragraphs indicates that they have nothing whatsoever to do with the County.  Several paragraphs appear to address the municipal Judgeship position in

Eatontown, New Jersey, id. ¶¶ 247-51, while another alleges that there is an inherent conflict between dispensation of justice and the raising of revenues throughout the entire state of New Jersey, id. ¶ 252, and the last one contains a reference to the arrest of public officials in Monmouth County in February 2005, id. ¶ 253.

### 3. DEM, Jenna Shapiro, Esq., Bettina Munson, Esq., and Stephen Carton, Esq.

Plaintiff also sues DEM, Shapiro, Munson and Carton,[4] her ex-husband's former attorneys in the domestic violence and divorce proceedings.  Id. ¶¶ 66, 67, 78, 79.

### 4. Robert and Paula DiLiberto

Plaintiff also sues her former in-laws—Robert and Paula DiLiberto.  Id. ¶¶ 69, 70.  She alleges that her ex-husband and his father, Robert, had a history of hiding assets, lying and colluding. See, e.g., id. ¶¶ 99, 101, 124, 132, 135, 142, 152.

### 5. Louis Johnson

Plaintiff sues Louis Johnson, the accountant for Plaintiff and her ex-husband.  Id.  ¶ 72. She alleges he prepared joint tax returns for 2009 through 2011, and "perhaps sign[ed] Damaris' name or at least fil[ed] joint tax returns electronically without Damaris' approval, and dealing with an IRS problem in 2012 for the 2011 tax year after having a falling out with Damaris and refusing to give Damari her business and personal tax information for 2012."  Id.  Plaintiff also alleges he is still her ex-husband's accountant, and that he was her accountant for her business in 2012 "but failed to perform his obligations for tax filings and maybe took her money."  Id.

---

[4] Plaintiff inaccurately refers to the law firm as Lomurro, Davison, Eastman and Munoz or "the Lomurro Firm."  Donald Lomurro, Esq., however, left in 2014 and the firm is now known as Davison, Eastman and Munoz, P.A. ("DEM").  Shapiro and Munson are former attorneys at DEM. Carton is a present DEM attorney.

### C. The Claims and Relief Sought

Plaintiff instituted this action on February 9, 2015.  The Complaint contains eight separate counts.  Plaintiff alleges the following claims: (1) violation of 42 U.S.C. § 1983 for denial of Plaintiff's Fourteen Amendment substantive and procedural due process rights, asserted against all Defendants (Count I); (2) violations of the Racketeering and Influence Corrupt Actions Act of 1970 ("RICO"), 18 U.S.C. §§ 1961-1968, asserted against all Defendants (Count II); (3) Monell claims pursuant to 42 U.S.C. § 1983, asserted against the Defendant State of New Jersey and DOES (Count III); and (4) Sedition pursuant to 18 U.S.C. § 2384 (Count IV); (5) Legal Malpractice (Count V); (6) Unjust Enrichment (Count VI); (7) Disgorge Fees (Count VII); and (8) Declaratory and Injunctive Relief (Count VIII).  See id.  ¶¶ 295-350.

 Plaintiff claims that she and her children suffered a list of injuries as a result of these violations.  See id. ¶¶ 351-354.  In order to remedy those injuries, Plaintiff seeks declaratory, injunctive, and monetary relief in various forms.  See id. ¶ 354.  To provide a few examples, Plaintiff asks this Court to do the following: (1) declare the Monmouth County Court proceedings described above void ab initio for fraud; (2) enjoin essentially all entities and persons connected to the proceedings from further involvement; (3) temporarily seize all of Defendants' assets; (4) award over $100 million in compensatory and punitive damages; (4) award treble damages under RICO; (5) award Plaintiff interest calculated from the date Plaintiff filed her divorce petition in Monmouth County Family Court; (6) a declaratory judgment regarding how state courts should handle family law cases.  Id. ¶¶ 354(e), (h)-(j), (m)-(p), (u)-(y).

## II.   LEGAL STANDARD

Defendants here seek to dismiss under Rule 12(b)(6) for failure to state a claim.  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a

short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007) (internal citation omitted).  In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

While the above framework still applies in cases where, as here, a plaintiff is proceeding pro se, the court is required to construe the pro se complaint more liberally than it would a complaint drafted by an attorney.  Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32 (3d Cir. 2011). This less stringent standard does not mean, however, that pro se plaintiffs need not abide by the

basic rules of pleading; they "still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

Several Defendants alternatively move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). A Rule 12(b)(1) motion to dismiss may be a challenge either to the face of the complaint or to the sufficiency of the underlying facts contained in the complaint. See Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). On a facial attack, the allegations in the complaint are entitled to a presumption of truthfulness, just as they are in the context of motion under Rule 12(b)(6). Id. On a factual challenge, however, the allegations in the complaint are not entitled to such a presumption. Polanco v. Omnicell, Inc., 988 F. Supp. 2d 451, 458 (D.N.J. 2013). The reviewing court may therefore consider "conflicting written and oral evidence … and … may decide for itself the factual issues which determine jurisdiction." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J. 1995). The party seeking to invoke federal jurisdiction bears the burden of establishing its existence. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

## III. DISCUSSION

### A. Preliminary Matters

#### 1. Failure to Comply With Rule 8(a)

As an initial matter, the Court finds that the Complaint fails to comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1) (emphasis added). The Complaint consists of 69 pages and 354 separate paragraphs. Many of those paragraphs contain statements that are wholly irrelevant to Plaintiff's claims or consist entirely of legal conclusions without any factual support. This begins on the first page of the Complaint, wherein Plaintiff alleges in Paragraph 3

10

that all Defendants are engaged in a pattern of racketeering activity "through a calculated system of fraud, eugenics, and social engineering." Compl. ¶ 3. Such bald legal conclusions are present throughout the Complaint and are generally of the same tenor. <u>See, e.g.</u>, <u>id.</u> ¶¶ 9-10, 18, 21, 26, 88, 89, 171, 195, 211, 240, 266, 297, 316.

Moreover, while Plaintiff names as Defendants essentially anyone with any connection to the state court proceedings, she largely fails to make any specific allegations against many of them. <u>See</u> <u>Pietrangelo v. NUI Corp.</u>, No. 04-3223, 2005 U.S. Dist. LEXIS 40832, at *34 (D.N.J. July 18, 2005) (granting motion to dismiss for failing to comply with Rule 8(a) where "Plaintiffs fail[ed] to differentiate between the defendants"). The Complaint not only violates Rule 8(a)'s "short and plain statement" requirement, but it also simply fails to demonstrate an entitlement to relief against any of the defendants. Therefore, the Court would be justified in dismissing the Complaint for failure to comply with Rule 8(a). <u>See</u> <u>Venezia v. Union Cnty. Prosecutor's Office</u>, No. 10-6692, 2011 U.S. Dist. LEXIS 58043, (D.N.J. May 31, 2011) (dismissing an amended complaint for failure to comply with Rules 8(a) because the allegations were not short, plain, concise, and direct and the amended complaint "present[ed] a dense rambling thicket of statements over the course of fifty-five pages, as well as 200 pages of exhibits[.]").

Because the Complaint is deficient for additional reasons, however, the Court will review the remainder of the Complaint and not dismiss the Complaint solely because of the failure to comply with Rule 8(a). <u>See</u> <u>Howe v. Litwack</u>, No. 12-4480, 2013 WL 3305994, at *6 (D.N.J. June 30, 2013) (finding that the complaint failed to comply with Rule 8(a) but reviewing the sufficiency of the complaint on other grounds).

## 2. As a Non-Lawyer, <u>Pro</u> <u>Se</u> Plaintiff, Ms. Adamo, May Not Represent Her Children Nor Bring a Class Action

Plaintiff seeks to represent "her children" in this suit.  As has been noted, Plaintiff is proceeding in this action <u>pro se</u>, and Plaintiff has not asserted that she is herself a licensed attorney. In such circumstances, it is well-settled law that Plaintiff is "not entitled to play the role of attorney for [her] children in federal court." <u>Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa.</u>, 937 F.2d 876, 882 (3d Cir. 1991).  Therefore, the relief sought in the Complaint is barred insofar as it is sought on behalf of her children.

Plaintiff also seeks to represent an alleged class of persons similarly situated.  The same considerations apply.  Plaintiff is not an attorney and may not represent the interests of a class. <u>See</u> <u>Sinclair v. Citi Mortg., Inc.</u>, 519 F. App'x 737, 739 (3d Cir. 2013) (explaining that "one <u>pro se</u> litigant cannot represent another") (citing <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir. 1975) (noting that "it is plain error to permit [a litigant] who is unassisted by counsel to represent his fellow [plaintiffs] in a class action.")).

## B.  Plaintiff's Claims are Barred Under the <u>Rooker-Feldman</u> Doctrine

Numerous Defendants argue in their motions to dismiss that this Court lacks subject-matter jurisdiction to hear this case under the <u>Rooker-Feldman</u> doctrine.  To the extent that the Complaint seeks to challenge orders and judgments issued by the New Jersey Superior Court, Monmouth Vicinage, the Court agrees.

"The <u>Rooker–Feldman</u> doctrine deprives a federal district court of jurisdiction to review, directly or indirectly, a state court adjudication." <u>Judge v. Canada</u>, 208 F. App'x 106, 107 (3d Cir. 2006) (citing <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923)). This doctrine precludes courts from evaluating "constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding."

FOCUS v. Allegheny Cnty. Ct. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotations omitted). "State and federal claims are inextricably intertwined (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered [or] (2) when the federal court must . . . take action that would render [the state court's] judgment ineffectual." ITT Corp. v. Intelnet Intl, 366 F.3d 205, 211 (3d Cir. 2004) (internal quotation marks and citations omitted). "In other words, Rooker–Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling." FOCUS, 75 F.3d at 840 (internal citation omitted).

The Third Circuit has consistently held that the Rooker–Feldman doctrine prohibits suits brought in federal court where, as here, Plaintiff challenges the judgments of state family courts. See, e.g., Gass v. DYFS Workers, 371 F. App'x 315, 315-16 (3d Cir. 2010) (affirming district court dismissal under Rooker–Feldman of claims asserted against state court judge, DYFS, DYFS officials, deputy attorneys general, and public defender attorney in underlying termination of parental rights action to the extent plaintiff challenged family court orders regarding custody of two minors); Johnson v. City of New York, 347 F. App'x 850, 851-52 (3d Cir. 2009); McKnight v. Baker, 244 F. App'x 442, 444-45 (3d Cir. 2007); McAllister v. Allegheny Cnty. Family Div., 128 F. App'x 901, 902 (3d Cir. 2005).[5]

As the Court noted, the Complaint is almost singularly focused on Plaintiff's dissatisfaction with the state court proceedings in Superior Court of New Jersey, Monmouth Vicinage.

---

[5] Similarly, courts within this District have repeatedly recognized that they lack subject matter jurisdiction to entertain claims which challenge adjudications made by state family courts. See, e.g., Reed v. N.J. Div. of Youth & Family Servs., No. 09-3765, 2012 WL 1224418 (D.N.J. Apr. 10, 2012) (collecting cases); Dobron v. N.J. Div. of Youth & Family Servs., No. 13-2353, 2014 WL 1094854 (D.N.J. Mar. 18, 2014) (collecting cases); Melleady v. Blake, No. 11-1807, 2011 WL 6303245, at *10-13 (D.N.J. Dec. 15, 2011); Wolf v. Escala, No. 14-5985, Dkt. No. 81 (D.N.J. May 20, 2015).

Specifically, Plaintiff seeks a review of the judgments from her domestic violence and divorce proceedings and unequivocally requests that this Court declare all of the state court judgments void.  See Compl. ¶¶ 349-50, 354 (e). The Court finds that Plaintiff's claims in this matter are inextricably intertwined with the state court judgments.  The Court, therefore, lacks subject matter jurisdiction over this case pursuant to Rooker-Feldman to the extent that Plaintiff seeks to overturn the state court decisions.

IV.    **Claims Against The State Defendants**

A. **The Individually Named Judges Are Either Immune from Suit or Must Be dismissed for Failure to State a Claim**

Plaintiff asserts claims against various Judges.  "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages'" for actions taken in the performance of their official duties.  Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (quoting Mireles v. Waco, 502 U.S. 9, 9 (1991)).  Indeed, judicial immunity even extends to judicial acts that are taken "in excess of [the judge's] jurisdiction, and are alleged to have been done maliciously or corruptly."  Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).  There are accordingly only two situations in which judicial immunity will not attach: (1) where the judge's acts were non-judicial in nature—that is, they were "not taken in the judge's judicial capacity"; or (2) where the judge's acts were judicial in nature, but were "taken in the complete absence of all jurisdiction."  Mireles, 502 U.S. at 11-12.

In this case, Plaintiff seeks various forms of money damages, including compensatory damages of $100 million, punitive damages in the same amount, and treble damages pursuant to RICO.  She indiscriminately seeks these damages against all Defendants, a group that includes the following nine judges: Chief Justice Rabner, Judge Grant, Judge Accurso, Judge Thornton, Judge Sheedy, Judge Grasso Jones, Judge Kondrop Coyle, Judge Lawson, and Judge Locascio.  The

Court notes at the outset that the Complaint fails to plead any substantive allegations against a number of these judges.  In any event, the substantive allegations that Plaintiff does plead against the judges do not identify either a non-judicial act or an act taken in the complete absence of jurisdiction.  Accordingly, all individually named judges are entitled to absolute judicial immunity and are dismissed with prejudice from this case.  Moreover, as will be more fully developed below each of Plaintiff's causes of action fails to state a claim, and the Court separately relies on that reasoning as a basis for dismissal.

### B. Former Law Clerk Rodriguez, Ombudsman Romano, Executive Director Tonelli, and Senior Probation Officer Mandell Are Entitled to Quasi-Judicial Immunity and the Allegations Against Them Fail to State a Claim

Quasi-judicial immunity shields judicial employees "from liability for damages in a suit challenging" their conduct in carrying out facially valid court orders.  Addlespurger v. Corbett, 461 F. App'x 82, 85 (3d Cir. 2012) (citing Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772-73 (3d Cir. 2000)).  "When judicial immunity is extended to officials other than judges, it is because their judgments are functional[ly] comparab[le] to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." Kwasnik v. Leblon, 228 F. App'x 238, 244 (3d Cir. 2007), cert. denied, 552 U.S. 980 (2007) (internal citation omitted).

Ms. Rodriguez, former law clerk to Judge Sheedy, Ombudsman Romano, ACJC Executive Director Tonelli, and Senior Probation Officer Mandell are all entitled to quasi-judicial immunity as the allegations against each of them involve their "official duties that are integral to the judicial function," Alfred v. New Jersey, No. 13-0332, 2013 U.S. Dist. LEXIS 124418, at *26 (D.N.J. Aug. 29, 2013) and "decisions which involve the exercise of discretionary judgment," Campbell v. Supreme Court of New Jersey., No. 11-555, 2012 U.S. Dist. LEXIS 41650, at * 32 (D.N.J. Mar. 27, 2012).  See also  Price El v. Superior Court of New Jersey., No. 11-2213, 2012 U.S. Dist.

LEXIS 3682, at *10 (D.N.J. Jan. 12, 2012).  These Defendants may be dismissed on that basis alone.  More fundamentally, however, the Complaint simply fails to plead sufficient facts giving rise to liability as to any of these Defendants.  Iqbal, 556 U.S. at 678.  Defendants Rodriguez, Romano, Tonelli, and Mandell are therefore dismissed from this case with prejudice.

### C. The Eleventh Amendment Bars Plaintiff's Claims Against The State of New Jersey, State Agencies, and State Officials Sued in Their Official Capacity

Plaintiff brings claims against (1) the State of New Jersey; (2) the Office of Attorney General; (3) Administrative Office of the Courts (the "AOC"); (4) Superior Court of New Jersey, Monmouth Vicinage; (5) Advisory Committee on Judicial Conduct ("ACJC")[6]; and (6) Governor Chris Christie sued in his official capacity.  Plaintiff's claims against these State Defendants are barred by the Eleventh Amendment.

The Eleventh Amendment "protects a state or state agency from a suit brought in federal court by one of its citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity."  Thorpe v. New Jersey, 246 F. App'x 86, 87 (3d Cir. 2010); Edelman v. Jordan, 415 U.S. 651, 663 (1974).  Congress has not abrogated the state's sovereign immunity with respect to claims under § 1983.  See Thorpe, 246 F. App'x at 87.  The Eleventh Amendment also immunizes state agencies from suit in federal court and individual officials sued in their official capacities when the state is the real party in interest.  See Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Hussein v. New Jersey, No. 09-1291, 2010 U.S. Dist. LEXIS 5779, at *10 (D.N.J. Jan. 26, 2010) (extending immunity to Governor Corzine); Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989), cert denied, 493 U.S. 850, 107 L.

---

[6] The Court also finds that the ACJC and Executive Director Tonelli of the ACJC are also immune from suit pursuant to N.J. Court Rule 2:15-22.

Ed. 2d 107, 110 S. Ct. 148 (1989) (finding that state agency entitled to immunity "when a judgment against it would have had essentially the same practical consequences as a judgment against the State itself").

Here, the State of New Jersey has neither consented to suit nor waived its Eleventh Amendment Immunity.  The State is the real party in interest here, as a judgment against any of the state agencies or Governor Christie, would have the same effect as a judgment against the State itself.  Accordingly, the State of New Jersey, the above-named state entities, and Governor Christie, sued in his official capacity, are entitled to Eleventh Amendment immunity from suit. These Defendants are dismissed with prejudice.

## V.     Plaintiff's Constitutional Claims—Counts One through Four

### A.  Counts One:  Fourteenth Amendment Violation - 42 U.S.C. § 1983

Plaintiff alleges a violation of her Fourteenth Amendment rights to substantive and procedural due process pursuant to 42 U.S.C. § 1983.  See Compl. ¶¶ 295-311. Specifically, Plaintiff alleges that "Defendants deprived Plaintiffs of their federal substantive and procedural due process rights in the Family Court by denying them access to the court, proper legal representation, fair and full hearings . . . ."  Id. ¶ 296.  Plaintiff appears to allege these violations against all Defendants generally.  This claim fails as to all Defendants.[7]

---

[7] As discussed supra, these claims fail against all of the State Defendants on Eleventh Amendment immunity grounds.  Beyond sovereign immunity, the § 1983 claim is invalid against the State of New Jersey and Governor Christie for two additional reasons.  First, neither the State nor Christie, in his official capacity, are "persons" under § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1979) ("[A] state is not a 'person' for purposes of 42 U.S.C. § 1983."); Hafer v. Melo, 502 U.S. 21, 25, (1991) ("Suits against state officials in their official capacity…should be treated as suits against the state.").  Second, even if Plaintiff is suing Christie in his individual capacity, the suit must fail, because the Complaint has failed to allege any personal involvement by Christie.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that a plaintiff must show a defendant's personal involvement, through "allegations of personal direction or actual knowledge and acquiescence.").  Plaintiff does not allege any facts giving rise to an inference that Christie

Under 42 U.S.C. § 1983, private citizens are provided with a mechanism to remedy violations of their federal civil rights.  In order to state a claim under § 1983, a plaintiff must establish two fundamental elements: (1) the plaintiff was deprived of "a right secured by the Constitution and the laws of the United States"; and (2) "the alleged deprivation was committed by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). The second of these elements generally requires that the alleged violators of the plaintiff's rights be "state actors" as that term has been interpreted under the Fourteenth Amendment. Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  Therefore, private parties are generally not amenable to suit under § 1983 unless their conduct is "fairly attributable to the state." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

To determine whether a private actor's conduct is fairly attributable to the state, the reviewing court asks the following: (1) whether the conduct involves the exercise of "powers that are traditionally the exclusive prerogative of the state"; (2) whether the private party has enlisted the help of the state or acted "in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Kach, 589 F.3d at 646 (internal quotations and citations omitted).  If any of the three tests are satisfied, the private conduct constitutes state action. See id.

Defendants DEM, Shapiro, Munson, Carton, Johnson, Paula and Robert DiLiberto, and the NJSBA are not state actors under any of these three tests.  The Complaint is devoid of any allegations even suggesting that they engaged in conduct that could be viewed as state action.

---

had any form of personal knowledge or in any way acquiesced in any of the wrongs about which Plaintiff complains.  The claims against the State of New Jersey and Christie fail for this additional reason.

Accordingly, Plaintiff's § 1983 claims are dismissed with prejudice as to Defendants DEM, Shapiro, Munson, Carton, Johnson, Paula and Robert DiLiberto, and the NJSBA.[8]

Plaintiff's § 1983 claim is dismissed as to Defendant County of Monmouth for failure to to state a claim. Plaintiff's § 1983 allegations are conclusory and replete with general statements. Plaintiff does not allege any specific facts to identify how County of Monmouth violated Plaintiff's Fourteenth Amendment due process rights.[9] This is insufficient to state a claim for violation of § 1983 against County of Monmouth. Accordingly, this claim is dismissed.

### B. Count Two: RICO violation 18 U.S.C. §§ 1961-1968

In Count Two, Plaintiff alleges violation of the federal RICO statute, 18 U.S.C. §§ 1961-68. Plaintiff appears to be specifically alleging violation of 18 U.S.C. § 1962(c), which provides, in pertinent part, that:

> It shall be unlawful for any person employed by or associated with any enterprise any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Id. § 1962(c). A valid claim under § 1962(c) must allege the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004). In addition to these four elements, a plaintiff must also demonstrate that the § 1962 violation damaged his or her business or property. 18 U.S.C. § 1964(c). Commonly

---

[8] Courts have found that a state bar association was not a state actor for purposes of a § 1983 action. See, e.g., The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 121-22 (1st Cir. 2010). Courts have also found the same for the American Bar Association. See Muhammad v. Smith, No. 13- 760, 2014 U.S. Dist. LEXIS 99990, at *15 (N.D.N.Y. July 23, 2014) (collecting cases).

[9] Moreover, as noted supra, the specific allegations against the County of Monmouth under the heading "County of Monmouth," see Compl. ¶¶ 247-53, have nothing whatsoever to do with the County.

referred to as the RICO standing requirement, § 1964(c) requires a plaintiff to "show that defendant's RICO violation was not only a 'but for' cause of his injury, but also that it was the proximate cause." Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005).

The RICO claim fails for two reasons—Plaintiff lacks standing and fails to plead facts setting forth a prima facie claim.

Plaintiff lacks standing to bring a civil RICO claim. Plaintiff has failed to allege any injury to her business or property. Instead, Plaintiff claims that the state court proceedings have caused the following damages: (1) loss of time, money, legal fees and other expenses; and (2) various emotional and mental damages that caused Plaintiff to develop Post-Traumatic Stress Disorder ("PTSD") and Battered Woman's Syndrom ("BWS"). See Compl. ¶¶ 351-53. These injuries are personal in nature, and therefore not cognizable under RICO. See Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3d Cir. 1991) (medical expenses flowing from alleged conduct of defendants not recoverable under RICO).

Plaintiff also fails to allege the "racketeering activity" element of a cognizable § 1962(c) claim. "Racketeering activity" includes a variety of federal and state crimes. See 18 U.S.C. § 1961(1). Commonly referred to as the "predicate acts" required to establish a RICO violation, these underlying crimes and offenses range from mail fraud, 18 U.S.C. § 1341, to human trafficking, 18 U.S.C. §§ 1581-1592. In this case, Plaintiff alleges violations of virtually all of the RICO predicates listed in § 1961(1). See Compl. ¶ 323 (A)-(SS). There, Plaintiff merely lists the offenses. Plaintiff provides no factual allegations in support of any of these offenses. Plaintiff does not demonstrate how Defendants engaged in the racketeering type behavior alleged. This is insufficient to state a claim for a RICO violation.

Because Plaintiff fails to establish the requisite racketeering activity, she also necessarily fails to establish a pattern of such activity.  Thus, that element fails, as well.

Finally, Plaintiff fails to establish the existence of an enterprise.  In order to plead an association-in-fact enterprise, a plaintiff must plead, at a minimum, the following three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009); see also In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 369-70 (3d Cir. 2010).  Plaintiff fails to establish relationships between Defendants.  Instead, Plaintiff merely introduces various Defendants and identifies actions that they individually took, but she does not provide any factual detail as to how all of the Defendants are related to one another.  The RICO claim therefore fails to establish the "enterprise" element as well.

Because Plaintiff fails to establish either standing to bring a RICO claim and fails to plead facts setting forth a prima facie § 1962(c) claim, the Court is satisfied that Count Two must be dismissed in its entirety as to all Defendants.

### C.  Count Three: Monell Claims - 42 U.S.C. § 1983

Plaintiff asserts this claim against the State of New Jersey and DOES.  See Compl. ¶¶ 324-333.  Under § 1983, a municipality may be held liable when it causes a constitutional violation through the implementation of a policy, custom, or practice.  Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  As discussed supra, however, the State of New Jersey is immune from suit pursuant to the Eleventh Amendment.  Accordingly, this claim fails.

### D.  Count Four: Sedition

Plaintiff asserts a claim for "seditious conspiracy" pursuant to 18 U.S.C. § 2384, which states that:

> If two or more persons in any State or Territory, or in any place subject to the jurisdiction of the United States, conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, they shall each be fined under this title or imprisoned not more than twenty years, or both.

This is a criminal statute that does not provide a private right of action.  See Keyter v. Bush, No. 08-97, 2008 U.S. Dist. LEXIS 17045, at *5 (D. Del. Mar. 5, 2008) (noting that 18 U.S.C. § 2384, a criminal statute, does "not provide a private right of action").   Accordingly, this claim is dismissed with prejudice as to all Defendants.

## VI.    State Law Claims--Counts Five Through Eight

### A.  Count Five—Legal Malpractice

Plaintiff alleges legal malpractice against "Defendants as attorneys named herein." Defendants DEM, Shapiro, Munson, and Carton move to dismiss this claim.  Under New Jersey law, a legal malpractice claim consists of the following elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."  McGrogan v. Till, 167 N.J. 414, 425 (2001).  Plaintiff fails to allege that he was in an attorney-client relationship with DEM, Shapiro, Munson, or Carton.  Apparently, these Defendants were attorneys for Plaintiff's ex-husband, not Plaintiff, during the domestic violence and divorce proceedings. Accordingly, Plaintiff fails to state a legal malpractice claim against any of these Defendants.

### B.  Counts Six and Seven—Unjust Enrichment and Disgorge Fees

In Count Six, Plaintiff alleges unjust enrichment against Defendants.  In order to state a claim for unjust enrichment, the plaintiff must allege that the defendant received a benefit at the

plaintiff's expense "under circumstances that would make it unjust for defendant to retain the benefit without paying for it."  Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011) (internal quotations and citations omitted).  Unjust enrichment is not an independent tort cause of action; rather, it is generally used in the context of quasi-contractual liability.  Castro v. NYT Television, 370 N.J. Super. 282, 299 (App. Div. 2004).  Plaintiff alleges that "Defendants have been unjustly enriched in amount paid by Plaintiff DAMARIS and/or Defendant BRETT DILIBERTO . . . ."  Compl. ¶ 345.  She does not specify which Defendants she actually paid and how much she paid them.  Even assuming Plaintiff did make payments to Defendants, however, Plaintiff fails to allege "circumstances that would make it unjust for [them] to retain" the payments.  Snyder, 792 F. Supp. 2d at 723-24.  Rather, Plaintiff makes bare allegations of wrongful conduct and provides no factual support for her assertions.  Such pleading is insufficient and is dismissed.

Count Seven is also dismissed.  In this Count, Plaintiff requests that all fees paid must be disgorged.   A cause of action for disgorgement involves the right to recover ill-gotten gains from a breach of public trust.  County of Essex v. First Union Nat. Bank, 373 N.J. Super. 543, 552 (N.J. Super. Ct. App. Div. 2004).  Plaintiff has not alleged any facts to support this claim against any of the Defendants.  This claim is dismissed.

### C.  Count Eight—Declaratory and Injunctive Relief

In this Count, Plaintiff seeks a stay of the state court proceedings in light of the fact that she asserts claims under 42 U.S.C. § 1983 and 18 U.S.C. §§ 1961-1968.  See Compl. ¶ 350.  While the Anti-Injunction Act generally bars federal courts from enjoining ongoing state court proceedings, the Act permits such an injunction in three narrow circumstances: "where the injunction (1) is expressly authorized by Congress; (2) is necessary in aid of the federal court's

jurisdiction; or (3) is necessary to protect or effectuate the federal court's judgment." 28 U.S.C. § 2283; U.S. Steel Corp. Plan for Emp. Ins. Benefits v. Musisko, 885 F.2d 1170, 1176 (3d Cir. 1989).

Plaintiff has failed to allege that any exceptions set forth in the Anti-Injunction Act apply. It is not clear whether injunctive or equitable relief is available at all in private civil RICO actions, and in any event, as discussed supra, Plaintiff fails to state a claim under RICO.[10] Section 1983, however, expressly authorizes the issuance of federal injunctions against state courts. Mitchum v. Foster, 407 U.S. 225, 242-43 (1972). Thus, an injunction could theoretically issue in this case, but because Plaintiff fails to state a claim under § 1983, the Court declines Plaintiff's invitation to do so.[11] Count Eight is therefore dismissed.

**VII.   CONCLUSION**

In light of the foregoing, all of Defendants' motions to dismiss are **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE** as to the following Defendants:[12]

---

[10] Whether civil RICO permits a private party to secure injunctive relief, which would certainly place the statute under the "expressly authorized" exception to the Anti-Injunction Act, is far from clearly established. See P.R.F., Inc. v. Philips Credit Corp., 92-2266, 1992 U.S. Dist. LEXIS 19696, at *6-7 (D.P.R. Dec. 21, 1992) (explaining that the Supreme Court has never addressed the matter, and only two appellate courts have faced the issue, and both have concluded that injunctive relief is not available to private plaintiffs under civil RICO). Plaintiff has not cited, and the Court is not aware of, any Third Circuit case law that provides otherwise.

[11] In addition, to the extent that the state court proceedings have concluded, there would not be any proceedings for the Court to enjoin.

[12] The following Defendants did not file any response to Plaintiff's Complaint: (1) Brian Morgan; (2) Tradition (North America), Inc.; and (3) Deborah Briskin. There is no proof, however, that these Defendants were ever served. Plaintiff did not file an executed Summons and time to serve them has expired. The Complaint is, therefore, dismissed as to these Defendants for failure to effectuate timely service. See Fed. R. Civ. P. 12(b)(5) and 4(m). Two other Defendants—pro se Charles Spiler ("Mr. Spiler") and James Andrews, Esq. ("Mr. Andrews")—filed Answers on June 18, 2015 and July 9, 2015, respectively. See Dkt. Nos. 3, 20. Plaintiff identifies Mr. Andrews as her attorney during part of the state court proceedings. Plaintiff identifies Mr. Spiler as a notary public and owner and/or manager of a UPS store in Monmouth County. As discussed supra, the Court dismisses all of the federal claims in this matter. The reasoning for dismissing those claims applies to Mr. Spiler and Mr. Andrews, and the Court will dismiss those claims as to them. The

1) The State Defendants including: the State of New Jersey; Office of the Attorney General; Administrative Office of the Courts ("AOC"); Superior Court of New Jersey, Monmouth Vicinage (improperly pled as "Monmouth County Superior Court"); Advisory Committee on Judicial Conduct ("ACJC"); Governor Chris Christie; Chief Justice Stuart Rabner; Hon. Glenn A. Grant, J.A.D., Acting Administrative Director; Hon. Allison E. Accurso, J.A.D.; Hon. Lisa P. Thornton, A.J.S.C.; Hon. Kathleen Sheedy, P.J. Fam.; Hon. Linda Grasso Jones, J.S.C.; Hon. Teresa Kondrop Coyle, J.S.C. (improperly pled as "Theresa Condrup Coyle); Hon. Lawrence M. Lawson, J.S.C. (ret.); Hon. Louis F. Locascio, (ret.) (improperly pled as "Louis F. Locacio, J.S.C."); Executive Director John Tonelli of ACJC; Ombudsman Theresa Romano; Senior Probation Officer Carole Mandell; and former law clerk Yesenia Rodrigues;

2) Davison, Eastman, Munoz, P.A. (improperly pled as the "Lomurro Law Firm" and "Lomurro, Davison, Eastman & Munoz"), Jenna Shapiro, Esq., Bettina Munson, Esq., and Stephen Carton, Esq.;

3) The New Jersey State Bar Association ("NJSBA"), (improperly pled as "New Jersey Bar Association");

4) Louis Johnson;

5) County of Monmouth; and

6) Paula DiLiberto and Robert DiLiberto.


An appropriate order accompanies this opinion.  This matter is hereby closed.


**DATE:** January 29, 2016

s/ *Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

Court declines to exercise supplemental jurisdiction over any remaining state law claims against these Defendants pursuant to 28 U.S.C. § 1367(c).